IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDWARD D. KLEINE                :
                                :
        Petitioner,             :
                                :
v.                              :    CIVIL ACTION NO. 08-00531-WS-B
                                :
TROY KING, *et al.*,            :
                                :
        Respondents.            :


## REPORT AND RECOMMENDATION

Edward Kleine, a state prisoner currently in the custody of Respondents, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his 2006 convictions by a jury in the Circuit Court of Baldwin County, Alabama, for manslaughter and leaving the scene of an accident with injury or death, for which he was sentenced to consecutive terms of twenty years for the manslaughter conviction and ten years for leaving the scene of an accident. (Doc. 1 at 3; Doc. 14, att. 1 at 7-12).

This matter is now before the undersigned Magistrate Judge on Petitioner's petition, Respondents' answer, briefs, and exhibits filed by the parties, the state court records, various state court briefs filed by the parties, and opinions and orders of the state trial and appellate courts. Following a careful review of the petition and record, the undersigned finds that an evidentiary

hearing is not warranted on the issues.[1]  <u>See</u> 28 U.S.C. §
2254(e)(2).

<u>FINDINGS OF FACT</u>

The Alabama Court of Criminal Appeals found the facts of

---

[1]Because Petitioner filed his federal habeas petition after
April 24, 1996, this case is governed by the Antiterrorism and
Effective Death Penalty Act (AEDPA).  "AEDPA expressly limits the
extent to which hearings are permissible, not merely the extent
to which they are required."  <u>Kelley v. Secretary for Dep't of
Corrs.</u>, 377 F.3d 1317, 1337 (11th Cir. 2004).  The legal standard
for determining when an evidentiary hearing in a habeas corpus
case is allowed is articulated in 28 U.S.C. § 2254(e)(2), which
provides:

> If the applicant has failed to develop the
> factual basis of a claim in State court
> proceedings, the court shall not hold an
> evidentiary hearing on the claim unless the
> applicant shows that–
>
> (A) the claim relies on–
>
> > (I) a new rule of constitutional law,
> > made retroactive to cases on collateral
> > review by the Supreme Court, that was
> > previously unavailable; or
> >
> > (ii) a factual predicate that could not
> > have been previously discovered through
> > the exercise of due diligence; and
>
> (B) the facts underlying the claim would be
> sufficient to establish by clear and
> convincing evidence that but for
> constitutional error, no reasonable
> factfinder would have found the applicant
> guilty of the underlying offense.

Petitioner has failed to establish that an evidentiary
hearing is warranted in this case.

this case to be as follows:[2]

> The appellant was convicted of manslaughter, a violation of § 13A-6-3(a)(1), Ala. Code 1975, and leaving the scene of an accident involving death or personal injuries, a violation of § 32-10-1, Ala. Code 1975. The trial court sentenced him to serve consecutive terms of twenty years in prison on the manslaughter conviction and ten years in prison on the leaving the scene of an accident conviction. The appellant did not file any post-trial motions. This appeal followed.

> The State presented evidence that, during the late evening hours of May 17, 2005, the victim and his roommate, Josh Deese, went to a bar called Mud Bugs; that they left the bar around 1:30 a.m. on May 18, 2005, and were walking back home on the sidewalk along Highway 59; that, as they were walking, Deese heard a loud bang and then saw the victim flying in front of his face; and that Deese turned and saw a vehicle speeding away from the scene. The State's evidence indicated that the victim died from his injuries.

> Doug Dupre testified that he worked with the appellant; that, on the evening in question, he, the appellant, and some other co-workers met at the Pink Pony; that the defendant got there between 7:15 p.m. and 7:30 p.m.; that the appellant was driving his Kia; that the defendant drank about four or five beers and a couple of Jagermeister shots while he was there; that he and the appellant left and went to Mud Bugs; that the appellant was driving; that the appellant drank between ten and twelve more beers; that they left around

---

[2]AEDPA directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Id. (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

2:00 a.m.; that the appellant was driving; that they were heading north; that he saw two men walking on the curb; that he told the appellant two or three times that there were two guys walking; that the appellant's vehicle was veering to the right side where the men were walking; that the speed limit in that area was 35 miles per hour, and they were probably going close to 50 miles per hour; that he turned to look at the appellant, and the appellant was just staring at him and smiling; and that, the next thing he remembered, they jumped the curb and hit the victim. He also testified that, after they hit the victim, the appellant was in shock; that he told the appellant they hit somebody, and the appellant just kept saying he had hit something; that the appellant stopped his vehicle a little further down the road; that the appellant drove up on the curb to try to park the vehicle; and that he and the appellant got out of the vehicle and walked away from the area.

The State presented evidence that Officer Bryan Fillingim of the Gulf Shores Police Department saw two men in the parking lot at Sawgrass Landing; that that area was about one-tenth of a mile from the area where the appellant had left his vehicle; that, when Fillingim turned around and went back to the area, the appellant was the only person he saw; that, when Fillingim asked the appellant for his identification, the appellant asked him if he had hit anyone; that Fillingim asked the appellant if the abandoned vehicle was his, and he said it was; and that, around that time, Officer James Nelson arrived at Sawgrass Landing. It also presented evidence that the appellant's speech was slurred and that he had a stagger in his step; that Fillingim talked to Nelson about field sobriety tests; that, at that time, the appellant became nervous, and the officers thought he might run; that the officers took the appellant to the ground, handcuffed him, and patted him down for weapons; that Fillingim arrested the appellant for DUI and leaving the scene of an accident;

4

> that the officers put the appellant in
> Nelson's vehicle, and Fillingim read him his
> <u>Miranda</u> rights; that the appellant was
> transported to the police department; that,
> while they were at the police department,
> Nelson administered a Draeger breath test to
> the appellant; and that the appellant's blood
> alcohol content was .17.

(Doc. 14, att. 12 at 1-3) (footnote omitted).

Petitioner was indicted by the Baldwin County Grand Jury on October 4, 2005, on four charges arising from his operation of a motor vehicle which resulted in the death of Clinton Kyle Thomas, a pedestrian: manslaughter, criminally negligent homicide, leaving the scene of an accident resulting in death or injury, and driving under the influence of alcohol. (Doc. 1 at 3; Doc. 14, att. 1 at 16-18). On November 16, 2005, Petitioner entered a plea of not guilty to the charges. (Doc. 14, att. 1 at 27). On August 21, 2006, the State dismissed the charges for criminally negligent homicide and driving under the influence of alcohol, and Petitioner's jury trial on the remaining charges commenced. (<u>Id.</u> at 5).

On August 25, 2006, the jury found Petitioner guilty of manslaughter and leaving the scene of an accident with death or injury. (<u>Id.</u>). On September 27, 2006, the trial court sentenced Petitioner to twenty years imprisonment on the manslaughter conviction and ordered him to pay a $1,000 fine, $2,946.88 in restitution, $5,000 to the Alabama Crime Victims Compensation Fund, and court costs. (<u>Id.</u> at 7-12). The trial court further sentenced

5

Petitioner to a consecutive term of ten years imprisonment on his conviction for leaving the scene of an accident. (Id.).

Petitioner filed a written notice of appeal to the Alabama Court of Criminal Appeals on November 3, 2006. (Id. at 141). On June 22, 2007, the Alabama Court of Criminal Appeals affirmed Petitioner's conviction in an unpublished memorandum opinion. (Doc. 14, att. 12). The Court of Criminal Appeals overruled Petitioner's application for rehearing on July 13, 2007. (Doc. 14, att. 14). The Alabama Supreme Court denied Petitioner's petition for a writ of certiorari and issued its certificate of judgment on September 14, 2007. (Doc. 14, att. 16). Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court, nor did he file a petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. (Doc. 1 at 4).

On September 17, 2008, Petitioner filed the instant petition for a writ of habeas corpus, setting forth the following five claims in support of his request for habeas relief: (1) the trial court violated Alabama law and Petitioner's right to due process by allowing a patrol officer to testify to point of impact without having qualifications to provide such expert testimony and without providing any factual basis for his opinion; (2) the trial court violated Alabama law and Petitioner's right to due process by admitting into evidence a diagram of the point of impact; (3) the

State violated Petitioner's due process, the trial court's discovery order, and Alabama Rule of Criminal Procedure 16.1 by not disclosing its intent to call an expert witness on point of impact, and the trial court violated Petitioner's due process and Alabama Rule of Criminal Procedure 16.5 by denying Petitioner's request for a continuance so that Petitioner could retain an expert to determine the point of impact; (4) the trial court violated Alabama law and Petitioner's right to due process by allowing into evidence the results of the breath alcohol analysis; and (5) the trial court violated Petitioner's right to due process through the cumulative effect of errors committed at trial. (Doc. 1 at 5-27). Respondents filed an Answer to the petition on January 20, 2009. (Doc. 14). The Court will consider each of Petitioner's claims in turn.

## DISCUSSION

In their Answer to Petitioner's habeas petition, Respondents do not dispute that Petitioner's claims are timely and have been properly exhausted in the state courts. Rather, Respondents argue that the state courts found Petitioner's claims to lack merit and that Petitioner's habeas petition is due to be denied. (Doc. 14 at 5).

The Court begins its analysis of Petitioner's claims with the principle that federal habeas relief for state prisoners attacking their conviction is limited in scope:

> The Supreme Court, a Justice thereof, a
> circuit judge, or a district court shall
> entertain an application for a writ of habeas
> corpus in behalf of a person in custody
> pursuant to the judgment of a State court
> only on the ground that he is in custody *in
> violation of the Constitution or laws or
> treaties of the United States*.

28 U.S.C. § 2254(a) (emphasis added). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of a constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). Questions of state law rarely have federal constitutional significance because "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). Such questions are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Id.

In reviewing an evidentiary determination of a state trial court, the federal court will "not sit as a 'super' state supreme court." Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (citations and quotation marks omitted). In Shaw, the Eleventh Circuit explained:

> Unlike a state appellate court, we are
> not free to grant the petitioner relief
> simply because we believe the trial judge has
> erred. The scope of our review is severely
> restricted. Indeed, the general rule is that
> a federal court will not review a trial
> court's actions with respect to the admission

of evidence. [Citations omitted]. A state
evidentiary violation in and of itself does
not support habeas corpus relief. [Citations
omitted]. Before such relief may be granted,
the violation must rise to the level of a
denial of "fundamental fairness." [Citations
omitted].

In the context of state evidentiary
rulings, the established standard of
fundamental fairness is that habeas relief
will be granted only if the state trial error
was "material in the sense of a crucial,
critical, highly significant factor."
[Citations omitted]. Moreover, application
of this standard has been notably one-sided,
consistent with the reluctance of federal
courts to second-guess state evidentiary
rulings. This court has established a
well-documented resistance to granting relief
when a habeas petition alleges a federal
claim based merely on a state evidentiary
ruling.

Id. For the reasons explained below, the Court finds that

Petitioner is not entitled to habeas relief on the basis of any of

his claims.

I. Claims 1, 2, and 3.

In his habeas petition, Petitioner asserts in Claims 1 and 2

that the trial court erred in applying Alabama rules of evidence

with respect to the admission of testimony and a diagram drawn by

a police officer, Joseph Diorio, regarding the point of impact of

Petitioner's vehicle with the decedent, Kyle Thomas. (Doc. 1 at 5-

20). Petitioner further asserts in Claim 3 that the State violated

the trial court's discovery order and Rule 16.1 of the Alabama

Rules of Criminal Procedure by not disclosing its intent to call

9

Officer Diorio as an expert witness on point of impact and that the trial court violated Rule 16.5 of the <u>Alabama Rules of Criminal Procedure</u> by not granting Petitioner a continuance so that he could retain an expert on point of impact.  (Doc. 1 at 20-25).

Petitioner raised Claims 1, 2, and 3 in the state court on direct appeal, and the Alabama Court of Criminal Appeals affirmed Petitioner's convictions and denied relief on these claims, stating:

I.

The appellant argues that the trial court erroneously allowed Officer Joseph Diorio of the Gulf Shores Police Department to testify as an expert regarding the point of impact.  Specifically, he contends that the State did not qualify Diorio as an expert pursuant to Rule 702, Ala. R. Evid., and that the State did not establish a reliable, factual basis for his opinion as required by Rule 703, Ala. R. Evid.  On direct examination, Diorio testified that, after he arrived at the scene, he talked to Deese about what had happened, walked off the scene, made his conclusion, and drew a diagram of the scene; that the diagram was not drawn to scale, but did include distances; and that, when making the diagram, he evaluated the debris field of the victim's belongings and his discussion with Deese.  He also testified that he saw a dark scuff mark on the curb that appeared to be fresh and that the scuff mark was an important factor in determining the crime scene diagram.  When describing the diagram, Diorio stated:

"This is an accident diagram.  This is Windmill Ridge Road.  This is Gulf Shores, Highway 59.  This would actually be where the bridge is and this is the water that

crosses under the bridge. This is
a parking area. There was debris
scattered about, the shoes, the
battery, the light cover from the
car. Here. The scuff marks were
about here. This is actually where
the point of impact was with Mr.
Thomas and this is where he came to
rest."

(R. 395). On cross-examination, Diorio
testified that he did not use any
mathematical formulations or principles of
physics or engineering to determine the point
of impact. He also testified that his
diagram did not show a specific point of
impact and admitted that it only showed a
generalized point of impact.

"If the witness is not testifying
as an expert, the witness's
testimony in the form of opinions
or inferences is limited to those
opinions or inferences which are
(a) rationally based on the
perception of the witness and (b)
helpful to a clear understanding of
the witness's testimony or the
determination of a fact in issue."

Rule 701, Ala. R. Evid.

In this case, Diorio's opinion regarding
the point of impact was not based on
scientific tests or specialized training.
Instead, his opinion was based on his
investigation and his observations at the
scene. Therefore, Diorio's testimony did not
constitute expert testimony, but was lay
testimony pursuant to Rule 701, Ala. R. Evid.
See Gavin v. State, 891 So. 2d 907, 970 (Ala.
Crim. App. 2003) (holding that a law
enforcement officer's testimony regarding
blood spatters was admissible because it "was
rationally based on his perception . . . as
well as his knowledge of the circumstances
surrounding the shooting"). Also, Diorio's
testimony was helpful to a clear

understanding of Deese's and Dupre's
testimony as well as the officers' testimony
regarding their observations at the scene.
Because Diorio did not testify as an expert
witness, the State was not required to
establish a factual basis for his opinion
pursuant to Rule 703, Ala. R. Evid.
Accordingly, the trial court did not err when
it admitted Diorio's testimony regarding the
point of impact.

Moreover, Deese and Dupre testified that
the victim was on the sidewalk at the time
the appellant hit him. "[Evidence] that may
be inadmissible may be rendered harmless by
prior or subsequent lawful testimony to the
same effect or from which the same facts can
be inferred." White v. State, 650 So. 2d
538, 541 (Ala. Crim. App. 1994), overruled on
other grounds, Ex parte Rivers, 669 So. 2d
239 (Ala. Crim. App. 1995). Because Diorio's
testimony regarding the point of impact was
cumulative to Deese and Dupre's testimony,
error, if any, in the admission of that
testimony was harmless. See Rule 45, Ala. R.
App. P.

II.

The appellant also argues that the trial
court erroneously admitted the accident
diagram into evidence because it was part of
an accident report. However, the State did
not introduce the accident report itself into
evidence. Rather, it only introduced the
diagram that was attached to the report. In
Spurgeon v. State, 560 So. 2d 1116 (Ala.
Crim. App. 1989), this court addressed the
admission of copies of diagrams that were
attached to an accident report. In that
case, we noted that "[t]he use of diagrams
for the purpose of illustrating testimony is
within the sound discretion of the trial
judge." Id. at 1123. In this case, the
accident report illustrated the testimony of
Diorio and the other witnesses who were at
the scene on the morning in question.
Therefore, the trial court did not abuse its

discretion when it allowed the State to
introduce the diagram into evidence.

### III.

The appellant further argues that the
State violated Rule 16.1, Ala. R. Crim. P.,
and the trial court's discovery order when it
did not timely notify him that it intended to
elicit expert testimony from law enforcement
officers regarding the point of impact.
Specifically, he contends that, because the
State did not notify him that it intended to
introduce expert testimony regarding the
point of impact, the trial court should not
have allowed the officers to testify
regarding the point of impact and should have
given him additional time to retain an expert
regarding the point of impact. The only
officer who provided any testimony regarding
the point of impact was Diorio. As we noted
in Part I of this memorandum, Diorio did not
testify as an expert witness. Further,
Diorio did not do any scientific testing in
this case. Therefore, the State did not
violate Rule 16. 1, Ala. R. Crim. P., or the
trial court's discovery order when it did not
identify Diorio as an expert witness before
the trial started. Accordingly, the
appellant's argument is without merit.

(Doc. 14, att. 12 at 3-6).

In order to obtain federal habeas relief on the basis of

Claims 1, 2, or 3, Petitioner must show that the Alabama state

courts erred in applying Alabama law, and that error rendered his

entire trial "fundamentally unfair." <u>Carrizales</u>, 699 F.2d at 1055.

For the precise reasons found by the Alabama Court of Criminal

Appeals in its memorandum opinion, this Court agrees that

Petitioner has failed to show that the state trial court erred in

admitting the evidence offered by Officer Diorio on point of impact

(Claims 1 and 2), and Petitioner has failed to show that the state trial court erred in refusing to grant him a continuance to obtain an expert on point of impact. (Claim 3). There being no error in the trial court's rulings, Petitioner was not deprived of fundamental fairness at his trial.

Moreover, even assuming error in the state courts' application of Alabama law, as argued by Petitioner in Claims 1, 2, and 3, habeas review of those errors is "severely restricted." Shaw, 695 F.2d at 530. Habeas relief is available only if the error fundamentally affected the fairness of the trial, that is, the error must have been "material in the sense of a crucial, critical, highly significant factor." Id. This Petitioner has failed to show.

In each of these three claims, Petitioner rests his argument on the proposition that the decedent, Kyle Thomas, was walking on the *side of the street* at the time of the impact, not on the *sidewalk*, as Officer Diorio testified. (Doc. 1 at 5-25). According to Petitioner, the erroneous admission of Officer Diorio's point of impact evidence violated his right to due process because it boosted the credibility of Deese and Dupree, who testified that the point of impact was on the sidewalk. (Id. at 15). However, Petitioner's argument is misplaced.

First, even if Officer Diorio's evidence on point of impact had been excluded, the overwhelming evidence presented at trial

14

indicated that the point of impact between Petitioner's vehicle and the decedent occurred on the sidewalk: Doug Dupre, the passenger in Petitioner's vehicle, testified that the impact occurred on the sidewalk; Josh Deese, the decedent's friend who was walking beside the decedent at the time that he was struck, testified that the impact occurred on the sidewalk; and another police investigator, Skip Callaway, testified that he located a fresh tire mark on the curb "up onto the sidewalk" in the area where Josh Deese testified that the decedent was hit. (Doc. 14, att. 2 at 169-70, 172-73, 178, 190; Doc. 14, att. 3 at 32, 73, 112, 137-40, 155; Doc. 14, att. 4 at 65-66). To contradict this evidence, Petitioner relies on evidence of a 911 call in which Deese stated to the 911 operator, "[m]y friend got hit on the side of the road;" "[w]e was just walking down the road and it hit from the back....;" and "[i]t knocked him off the side of the road over the bridge" (Doc. 14, att. 2 at 182, 184, 186); as well as Dupre's statement given to the police forty-five minutes after the accident in which he stated that he saw "two guys walking on the side of the street on a bridge or over a canal or something," and he told Petitioner to "[l]ook out for the two guys walking on the side of the road." (Doc. 14, att. 3 at 72, 83). However, these statements referring to the "side of the street" or road could be interpreted as simply less precise than, but not inconsistent with, the witnesses' subsequent testimony that the decedent was walking on the sidewalk at the time

15

of the impact.  In fact, Dupre explained that, when he said "on the side of the road," he meant "[o]ff to the side," "[u]p on that curb by that railing."[3]  (Doc. 14, att. 3 at 112).

Second, Petitioner cites <u>Snowden v. Singletary</u>, 135 F.3d 732, 739 (11th Cir. 1998), to support his argument that Officer Diorio's expert testimony on point of impact rendered his trial fundamentally unfair because it improperly boosted the credibility of the two main witnesses, Deese and Dupre.  However, Petitioner misreads <u>Snowden</u>.  In that case, the Eleventh Circuit held that the petitioner was entitled to habeas relief where the State's expert witness testified on the issue of the *credibility* of child witnesses who allegedly had been sexually abused by the petitioner. The Eleventh Circuit held that the expert testimony, which "forcefully" vouched for the children's credibility, improperly invaded the province of the jury, and, in that case, the error was material in the sense of a "crucial, critical, highly significant factor" because there was, otherwise, "very little evidence" of guilt in the case.  <u>Id.</u> at 738-39.  That is not the case here.

In this case, Officer Diorio did not testify to the credibility of any witness.  Moreover, Deese and Dupre were independent eye witnesses to the same incident who both testified that the point of impact between Petitioner's vehicle and the

---

[3] There is no evidence to support Petitioner's statement in his petition that the decedent was walking "in the road" at the time of impact.  (Doc. 1 at 5).

decedent occurred on the sidewalk. (Doc. 14, att. 2 at 169-70, 172-73, 178, 190; Doc. 14, att. 3 at 32, 73, 112). Their testimony was corroborated by physical evidence of a fresh tire mark on the curb in the area where Deese testified that the decedent was hit. (Doc. 14, att. 3 at 137, 139-40, 155; Doc. 14, att. 4 at 65-66). Thus, the <u>Snowden</u> case is inapposite to the present one, and Officer Diorio's testimony that the point of impact was on the sidewalk did not render Petitioner's trial fundamentally unfair by improperly "boost[ing] the credibility" of the two main witnesses at the trial. <u>Id.</u>, 135 F.3d at 739.

Third, Officer Diorio's point of impact evidence did not render Petitioner's trial fundamentally unfair because, even assuming, as Petitioner argues, that the impact occurred on the side of the road, not on the sidewalk, there still was sufficient evidence to convict Petitioner of manslaughter. <u>Alabama Code</u>, 1975, § 13A-6-3(a)(1), provides that a person commits the crime of manslaughter if he "recklessly causes the death of another person."

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary

> intoxication, as defined in subdivision
> (e)(2) of Section 13A-3-2, acts recklessly
> with respect thereto.

Ala. Code, 1975, § 13A-2-2(3).

As recounted by the Alabama Court of Criminal Appeals in its memorandum opinion, the evidence showed that Petitioner had a blood alcohol content of .17 at the time of the accident. (Doc. 14, att. 4 at 32-33). Prior to the accident, Petitioner had consumed approximately fourteen beers and four shots of Jagermeister at two different bars. (Doc. 14, att. 3 at 26, 29). Petitioner drove his vehicle from the first bar to the second bar. (Id. at 28). Petitioner also drove his vehicle after leaving the second bar. (Id. at 31). Upon leaving the second bar, Petitioner began driving in excess of the speed limit and his vehicle began to veer to the right. (Id. at 33-34). His passenger, Doug Dupre, warned him "that there were two guys walking." (Id.). However, Petitioner was looking at Dupre, not the road, and his vehicle collided with the decedent, Kyle Thomas. (Id. at 34-35). Under these circumstances, whether the point of impact was on the side of the road or on the sidewalk, there was sufficient evidence to find that Petitioner was reckless in causing the death of Kyle Thomas and, thus, to convict Petitioner of manslaughter. Therefore, any alleged error with respect to the admission of evidence through Officer Diorio that the point of impact was on the sidewalk was not "material in the sense of a crucial, critical, highly significant

factor," and, thus, did not deprive Petitioner of fundamental fairness at his trial. <u>Shaw</u>, 695 F.2d at 530.

For each of these reasons, Petitioner's Claims 1, 2, and 3 fail to state cognizable federal habeas claims and are due to be denied.

   II.  <u>Claim 4</u>.

   Petitioner next argues in his petition that he is entitled to relief under § 2254 because the state trial court violated Alabama law and Petitioner's right to due process by allowing into evidence the results of the breath alcohol analysis or "Draeger test." (Doc. 1 at 25). Petitioner raised Claim 4 in the state court on direct appeal, and the Alabama Court of Criminal Appeals affirmed Petitioner's convictions and denied relief on this claim, stating:

> IV.

>    Additionally, the appellant argues that the trial court erroneously denied his motion to suppress the results of the Draeger test because the State did not comply with the implied consent law set forth in § 32-5-192, Ala. Code 1975. Specifically, he contends that the trial court should have excluded the results of the Draeger test because he had not been arrested at the time Nelson administered the test.

>>    "Under Alabama's Chemical Test for Intoxication Act (Implied Consent Law) Ala. Code 1975, § 32-5-191, et seq., a motorist must have been 'lawfully arrested' before any chemical test to determine intoxication is conducted in order to authorize the admission into evidence of the test results. <u>Ex</u>

parte Love, 513 So. 2d 24 (Ala.
1987), on remand, 513 So. 2d 31
(Ala. Cr. App. 1987)."

Hays v. City of Jacksonville, 518 So. 2d 892,
893 (Ala. Crim. App. 1987).

In support of his contention, the
appellant relies on the fact that Sergeant
Skip Callaway of the Orange Beach Police
Department testified at the preliminary
hearing that he did not have any knowledge
that the appellant had been arrested before
the Draeger test was administered and the fact
that his report indicated that Fillingim had
told him that the appellant was in his patrol
vehicle, that he transported the appellant to
the police department, and that the appellant
was directed to take a chemical test.
However, both Fillingim and Nelson testified
that the appellant had already been arrested
at the time Nelson administered the Draeger
test. Also, during the suppression hearing,
Callaway testified that, based on the records,
the appellant had been arrested when the
Draeger test was administered. Further,
during the trial, Callaway testified that he
did not have any knowledge regarding whether
the appellant was arrested before the Draeger
test was administered because he was not
present when the appellant was arrested or
when the test was administered. Finally, he
testified that he had been confused as to
which officer transported the appellant to the
police department. Because the State
presented evidence from which the trial court
could have reasonably concluded that the
appellant had been arrested at the time Nelson
administered the Draeger test, it properly
denied the appellant's motion to suppress the
results of the Draeger test.

(Doc. 14, att. 12 at 6-7).

As with Claims 1 through 3, this Court's review of habeas

Claim 4, which asserts a state trial court error with respect to

the admission of evidence, is limited to whether the error rendered Petitioner's entire trial "fundamentally unfair." <u>Carrizales</u>, 699 F.2d at 1055. Having reviewed the entire record in this case, the Court agrees with the Alabama Court of Criminal Appeals, for the precise reasons stated in its memorandum opinion, that Petitioner has failed to show that the results of the breath alcohol analysis were inadmissible. The evidence fully supports the trial court's ruling that Petitioner was arrested prior to taking the Draeger breath alcohol test. (Doc. 14, att. 7 at 33, 37-38, 53, 58, 62-63, 67-68, 73, 102; Doc. 14, att. 4 at 22, 30, 54-55, 136; Doc. 14, att. 3 at 195). There being no error in the trial court's ruling, Petitioner was not deprived of fundamental fairness at his trial, and, thus, habeas Claim 4 is due to be denied.

    III. <u>Claim 5</u>.

    Last, Petitioner argues in his petition that he is entitled to relief under § 2254 because the cumulative effect of the state trial court's errors violated his right to due process. (Doc. 1 at 27). Petitioner raised Claim 5 in the state court on direct appeal, and the Alabama Court of Criminal Appeals affirmed Petitioner's convictions and denied relief on this claim, stating:

                                    V.

        Finally, the appellant argues that the cumulative effect of all of the above-referenced allegations of error affected his substantial rights. We have considered each of the allegations of error individually, and we have not found that any of those

21

allegations of error require reversal. We
have also considered the allegations of error
cumulatively, and we do not find that "the
accumulated errors have 'probably injuriously
affected [the appellant's] substantial
rights.'" <u>Ex parte Woods</u>, 789 So. 2d 941, 942-
43 n.1 (Ala. 2001) (quoting Rule 45, Ala. R.
App. P.). Therefore, the appellant's argument
is without merit.

For the above-stated reasons, we affirm
the trial court's judgment.

(Doc. 14, att. 12 at 7).

Again, having reviewed the entire record in this case, the
Court agrees with the Alabama Court of Criminal Appeals that
Petitioner has failed to show that any of the claimed errors denied
him a fair trial. Moreover, even considering the cumulative effect
of these alleged errors, "reversal is only warranted if the entire
trial is so replete with errors that the defendant was denied a
fair trial." <u>U.S. v. Adams</u>, 280 Fed. Appx. 940, 944 (11th Cir.
2008) (citing <u>United States v. Eckhardt</u>, 466 F.3d 938, 947 (11th
Cir. 2006)). Petitioner's trial was not so replete with errors
that he was denied a fair trial. Thus, Petitioner's habeas Claim
5 is due to be denied.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing § 2254
Proceedings, the undersigned recommends that a certificate of
appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule
11(a) ("The district court must issue or deny a certificate of
appealability when it enters a final order adverse to the

applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Petitioner's claims warrant the issuance of a Certificate of Appealability. The recommendation that the claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the

appropriate disposition of Petitioner's claims on the record
presented. It is thus recommended that the Court deny any request
for Certificate of Appealability.

CONCLUSION

The events which underlie this habeas are tragic for all
concerned, including the Petitioner. However, the undersigned
Magistrate Judge has extensively reviewed Petitioner's claims and
is of the opinion that Petitioner's rights were not violated and
that his request for habeas corpus relief should be denied.
Further, the undersigned Magistrate Judge is of the opinion that
Petitioner is not entitled to issuance of a Certificate of
Appealability. It is so recommended.

The instructions which follow the undersigned's signature
contain important information regarding objections to the report
and recommendation of the Magistrate Judge.

DONE this **21st** day of **April, 2010**.


**/s/SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.   *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to  do so will bar a *de novo* determination  by  the  district  judge  of  anything  in  the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement   of   Objection   to   Magistrate   Judge's Recommendation' within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the  party's  arguments  that  the  magistrate  judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   Fed. R. Civ. P. 72(b)(2).

2.	***Transcript (applicable Where Proceedings Tape Recorded).***
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the
Magistrate Judge finds that the tapes and original records in this
case are adequate for purposes of review.  Any party planning to
object to this recommendation, but unable to pay the fee for a
transcript, is advised that a judicial determination that
transcription is necessary is required before the United States
will pay the cost of the transcript.