# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EDWARD D. KLEINE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0531-WS-B |
| | ) |
| TROY KING, *et al.*, | ) |
| | ) |
| Respondents. | ) |

## ORDER

This habeas corpus action brought by an Alabama prisoner comes before the Court on petitioner's Statement of Objection to Magistrate Judge's Recommendation (doc. 18), and his memorandum of law (doc. 19) in support of same.

**I. Factual and Procedural History.**

On August 25, 2006, a jury in the Circuit Court of Baldwin County, Alabama, found petitioner, Edward D. Kleine, guilty of manslaughter and leaving the scene of an accident with injury or death. Those charges arose from an incident that took place in the early morning hours of May 18, 2005, on Highway 59 in Gulf Shores, Alabama. The State's evidence at trial was that Kleine, after consuming more than a dozen alcoholic beverages that evening, got behind the wheel of a car and drove in excess of the speed limit while failing to watch the roadway and ignoring his passenger's warning of pedestrians ahead. According to the State's evidence, Kleine's vehicle jumped the curb, striking Clinton Kyle Thomas (who had been walking on the sidewalk), inflicting fatal injuries, and tossing his body approximately 86 feet away. The trial court sentenced Kleine to a term of 20 years' imprisonment on the manslaughter conviction, as well as a term of 10 years' imprisonment to be served consecutively on the leaving the scene conviction.

On direct appeal to the Alabama Court of Criminal Appeals, Kleine litigated five assignments of error, to-wit: (i) the trial court erred in allowing Gulf Shores Police Officer Joseph Diorio to testify as an expert regarding the point of impact where Kleine's vehicle struck Thomas (and in particular, to designate that point of impact as the sidewalk, rather than the

roadway); (ii) the trial court erred in admitting into evidence a diagram that depicted the point of impact as the sidewalk; (iii) the trial court erred in not furnishing Kleine additional time to retain his own accident reconstruction expert upon the State's untimely disclosure that it intended to elicit point-of-impact expert testimony from Officer Diorio; (iv) the trial court erroneously denied Kleine's motion to suppress the Draeger test results for blood-alcohol levels because the statutory prerequisites for admissibility of such evidence were not satisfied; and (v) the cumulative effect of the above-described errors violated Kleine's substantial rights. On June 22, 2007, the Alabama Court of Criminal Appeals issued a written opinion rejecting on the merits all five of Kleine's grounds for appeal and affirming the trial court's judgment. Kleine's subsequent petitions for rehearing by the Alabama Court of Criminal Appeals, and for writ of certiorari by the Alabama Supreme Court, were summarily overruled or denied.

On September 17, 2008, Kleine timely filed a Petition for Writ of Habeas Corpus (doc. 1) in this District Court pursuant to 28 U.S.C. § 2254. Kleine's Petition raises the same five grounds for relief that he presented to the Alabama Court of Criminal Appeals on direct appeal.[1]

## II.    The Report and Recommendation.

Upon the filing of Kleine's Petition, Magistrate Judge Bivins received and considered extensive briefing from the parties on these five issues, including a 71-page memorandum of law (doc. 3) filed by Kleine and an Answer and Memorandum Brief (doc. 14) filed by the State.

---

[1] Petitioner is a citizen of the Kingdom of The Netherlands. In that regard, the undersigned has received a packet of materials from the American Embassy in The Hague, The Netherlands, consisting of correspondence from Kleine's family, photographs purporting to depict Kleine in prison and the condition of Kleine's vehicle after the accident, a list of names and email addresses of approximately 1,800 Dutch persons who signed a petition concerning Kleine's case, and a 67-page "Report to the Consulate General of the Kingdom of The Netherlands" authored by Kleine's present counsel of record. Much of this documentation relates to a claim that Kleine's sentence is unduly harsh when compared to those of similar offenders in Alabama. The § 2254 Petition does not raise any claim concerning alleged sentencing disparities; therefore, that issue is not properly before the undersigned for review. Moreover, Kleine's counsel has not sought inclusion of any of these materials in the record in this case, and the Court will not *sua sponte* place such documents in the record. To be clear, the U.S. Embassy in The Netherlands has taken no official position on this matter, but has simply served as a conduit to forward the above-described materials to this Court. That said, the Court certainly appreciates the importance of this matter to family members and petition signatories, as reflected in the Embassy documentation.

On April 21, 2010, the Magistrate Judge entered a Report and Recommendation (doc. 15) wherein she recommended that Kleine's habeas petition be denied because his rights under the Constitution, laws or treaties of the United States were not violated. With respect to Claims 1, 2 and 3 (pertaining to Officer Diorio's point-of-impact testimony, the diagram, and the failure to allow additional time for Kleine to retain an expert), the Magistrate Judge reasoned that the Alabama Court of Criminal Appeals had correctly found no error in the trial court's rulings, and that even if there were error it did not deprive Kleine of fundamental fairness. The Report and Recommendation elaborated that there was overwhelming evidence at trial that the point of impact was the sidewalk, that Officer Diorio's testimony did not improperly boost the credibility of any other witness, and that regardless of point of impact, there was sufficient evidence of recklessness to convict Kleine of manslaughter (*i.e.*, his extreme intoxication, his driving in excess of the speed limit, his failure to heed his passenger's warning of the two pedestrians, and his failure to keep his eyes on the road). As for Claim 4 (objecting to the trial court's refusal to exclude Draeger test results), the Magistrate Judge agreed with the Alabama Court of Criminal Appeals' assessment that those test results were properly admitted because the evidence fully supported the trial court's finding that Kleine was arrested prior to administration of the test. And with respect to Claim 5 (cumulative errors), the Magistrate Judge opined that his trial was not so replete with errors that he was denied a fair trial.

## III. Petitioner's Objections.

Kleine has now interposed objections to the findings of the Report and Recommendation as to each of his five grounds for relief, and has added a sixth objection to purported "factual findings" in that Report and Recommendation. The Court will address these objections, beginning with his challenge to the alleged findings of fact and then considering each of his five § 2254 issues.[2] In doing so, the Court adheres to the overriding legal standard that habeas relief

---

[2] In reviewing Kleine's objections to the Report and Recommendation, this Court undertakes "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Willis v. United States*, 2009 WL 2840746, *1 (11th Cir. Sept. 4, 2009) ("When a party objects to the findings contained in a magistrate judge's report and recommendation, the district court must conduct a *de novo* review of those findings."). The Court may, but is not required to, consider any argument Kleine may raise now that he did not present to the magistrate judge. *See, e.g., Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).

must be denied "unless the decision of the state court either was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Alston v. Department of Corrections, Florida*, --- F.3d ----, 2010 WL 2680366, *6 (11th Cir. July 8, 2010) (citation and internal quotation marks omitted). This is "a highly deferential standard for reviewing state court judgments." *Carroll v. Secretary, Dep't of Corrections*, 574 F.3d 1354, 1364 (11th Cir. 2009). To prevail, a § 2254 petitioner must show that the state court decision either (a) "applie[d] a rule that contradicts governing law set forth in Supreme Court cases or confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to the Court's"; or (b) "identifie[d] the correct legal rule from Supreme Court case law but unreasonably applie[d] that rule to the facts of the petitioner's case" or "unreasonably extend[ed], or unreasonably decline[d] to extend" that rule to a new context. *Spencer v. Secretary, Dep't of Corrections*, --- F.3d ----, 2010 WL 2488422, *5 (11th Cir. June 22, 2010) (citations and internal quotation marks omitted).

     *A.*     *Objection to Factual Findings.*

As an initial matter, Kleine contests certain "factual findings of the Alabama Court of Criminal Appeals" that he says were improperly "deemed accurate" by the Magistrate Judge. (Doc. 19, at 5.) According to Kleine, "the key incorrect factual findings are that the victim was walking on the sidewalk; that Kleine was driving over the speed limit; that Kleine's vehicle 'jumped the curb' hitting the victim; and the amount of alcohol Kleine had consumed." (*Id.*) Kleine insists that all of these facts are disputed, and that there are countervailing record facts on each of these points that should have been acknowledged.[3]

     The threshold defect with Kleine's objection is that the state court opinion reflects no such factual findings. Far from making definitive pronouncements as to such jury questions as where the victim was walking, how fast Kleine was driving, whether Kleine's vehicle jumped the

---

       3     By statute, in habeas proceedings brought "by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Childers v. Floyd*, 608 F.3d 776, 789 n.5 (11th Cir. 2010).

curb, or how much alcohol Kleine had consumed, the Alabama Court of Criminal Appeals' opinion states only that "[t]he State presented evidence" at trial in support of each of these propositions. (Doc. 2, Exh. A, at 1-3.) The Magistrate Judge's Report and Recommendation does not purport to find new facts, but simply block-quotes the section of the state court opinion outlining the State's evidence at trial. (Doc. 16, at 3-5.) These are not findings of fact. More fundamentally, no specific judicial factual findings on any of these points are needed to address and resolve Kleine's grounds for habeas relief. Neither the state appellate court nor the Magistrate Judge was responsible for second-guessing the jury by making its own factual findings as to what happened on the night in question, in order to adjudicate petitioner's assignments of error. Thus, Kleine is objecting to "findings of fact" that were never made and that would in any event be superfluous to the full and complete treatment of his § 2254 petition.

For these reasons, the Court **overrules** Kleine's objection to purported factual findings by the state court, and declines his invitation to reweigh evidence presented to the factfinder at trial based on his challenges to credibility of the State's witnesses.[4]

### B. *Admission of Point-of-Impact Testimony.*

Both the state court and the Magistrate Judge determined that the trial court did not err in admitting Officer Diorio's point-of-impact testimony because he was testifying as a lay witness based on his investigation and observations at the scene, rather than as an expert. Kleine objects to these determinations. He further objects to the state court and Magistrate Judge's alternative conclusion that any error would have been harmless, given that such evidence was cumulative of eyewitness testimony and other evidence that the victim was walking on the sidewalk when Kleine's vehicle struck him.

"Very rarely will a state evidentiary error rise to a federal constitutional error" warranting habeas relief. *Snowden v. Singletary*, 135 F.3d 732, 739 (11th Cir. 1998). Indeed, "[f]ederal

---

[4] To be clear, petitioner does not dispute that the State actually presented witness testimony at trial to the effect that the victim was walking on the sidewalk, that Kleine was driving well over the speed limit, that his vehicle jumped the curb, and that he had consumed more than a dozen alcoholic beverages. Rather, petitioner's contention is principally that the jury should not have believed those witnesses because at other times those witnesses had made statements that may have differed materially from their trial testimony. Of course, the jury heard all about those purportedly inconsistent statements during cross-examination of the State's witnesses, and made appropriate credibility determinations in reaching its verdict.

courts generally do not review a state court's admission of evidence in habeas corpus proceedings. … We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial. … A denial of fundamental fairness occurs whenever the improper evidence is material in the sense of a crucial, critical, highly significant factor." *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) (citations and internal quotation marks omitted); *see also Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) ("the erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction") (citation omitted). Thus, to obtain habeas relief based on the erroneous admission of evidence, a petitioner must show "that the testimony had a substantial and injurious effect or influence" on the jury's verdict. *Wood*, 503 F.3d at 414 (citations omitted).[5]

The Alabama Court of Criminal Appeals concluded that, as a matter of state law, Officer Diorio's opinion concerning point of impact "did not constitute expert testimony, but was lay testimony pursuant to Rule 701, Ala. R. Evid." because such testimony was rationally based on his perceptions at the scene, rather than any scientific tests or specialized training. (Doc. 2, Exh. A, at 4.) This reasoning is problematic. Officer Diorio did not see the accident happen. Surely, a witness goes far beyond his "perception" in extrapolating from scattered physical evidence at a crime scene to formulate a hypothesis about the location where vehicle and victim collided. Moreover, Alabama courts have consistently analyzed law enforcement testimony concerning point of impact under the rubric of Rule 702 expert opinions, rather than Rule 701 lay opinions. *See, e.g., Tillis Trucking Co. v. Moses*, 748 So.2d 874, 879-81 (Ala. 1999) (state trooper allowed to testify about point of impact only after laying foundation by testifying about his extensive training and experience in making point-of-impact determinations); *Brown v. AAA Wood Products, Inc.*, 380 So.2d 784, 786 (Ala. 1980) ("Etheridge is a police officer with sufficient experience in accident investigation to qualify to give an expert opinion as to the location of the point of impact in a motor vehicle accident."); *Marshall v. Kopesky*, 361 So.2d 76, 81 (Ala. 1978) ("Once qualified as an expert the witness who will testify as to point of impact must detail

---

[5] The "fundamental fairness" standard flows from the notion that "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

the facts upon which his conclusion is based."); *Stevens v. Stanford*, 766 So.2d 849, 850 (Ala.Civ.App. 1999) ("In Alabama, expert opinion evidence as to the point of impact of a collision is clearly admissible, so long as the expert details the facts upon which his conclusion is based.") (citations omitted); *Brown v. State*, 377 So.2d 1139, 1142 (Ala.Crim.App. 1979) (in manslaughter prosecution, trial court properly allowed police officers to testify as experts regarding location of vehicles at time of impact, where officers had formal instruction in accident investigations and extensive experience in accident investigation and reconstruction).[6] It is difficult to reconcile this line of Alabama authorities viewing point of impact testimony as a subject for expert testimony with the state court's reasoning in this case that Officer Diorio was not testifying as a Rule 702 expert, but was simply testifying about his rational perceptions as a Rule 701 lay witness, especially where the witness had to analyze and interpret potentially conflicting physical evidence to formulate conclusions as to point of impact, rather than simply talking about his contemporaneous observations.

Of course, even if the admission of Officer Diorio's point-of-impact testimony under Rule 701 were erroneous, such a finding would not entitle Kleine to habeas relief unless that evidence compromised the fundamental fairness of his trial, so as to implicate due process concerns. This Court agrees with the Magistrate Judge and the Alabama Court of Criminal Appeals that this high threshold is not satisfied here. In the first place, Officer Diorio faced withering cross-examination from defense counsel in which he admitted to being on "the bottom of the rung" in the Gulf Shores Police Department, and further admitted that in establishing point of impact, he had employed no mathematical formulations, principles of physics, scientific principles, engineering principles, or the like. In response to defense counsel's grilling, Officer Diorio also acknowledged to the jury that he was not a registered professional engineer, that he

---

[6] In *Dyer v. Traeger*, 357 So.2d 328 (Ala. 1978), the Alabama Supreme Court cited with approval language from a California case recognizing that, if the point of impact is not obvious to an untrained person, "the opinions of trained experts in the field on this subject will be of great assistance to the members of the jury …. In such cases a traffic officer who … has been required to render official reports not only as to the facts of the accidents but also … his opinion, where necessary, as to the point of impact, is an expert." *Id.* at 330 (citation omitted); *see generally McKelvy v. Darnell*, 587 So.2d 980, 985 (Ala. 1991) (where investigating trooper who was not eyewitness testified as to speed of car at time of collision, "the rule seems to be clear that opinion testimony is proper, assuming the witness is determined to be qualified, and assuming that the witness details the facts upon which the witness's conclusion is based").

had no certification in accident reconstruction, that he lacked "special training of any nature from anybody in the field of accident reconstruction," that he had not identified a specific point of impact that could be measured from the curb or the retaining wall, and that certain debris (including the victim's shoes) had been found in the travel portion of the roadway. (Doc. 14, Exh. A, at 398-405.)[7] Such vigorous cross-examination substantially discredited Officer Diorio's point-of-impact testimony, exposing its weaknesses and blunting adverse effects it might have had on the defense.

What's more, the Magistrate Judge and the Alabama Court of Criminal Appeals correctly pointed out that Officer Diorio's opinions as to point of impact were only a small piece in a much larger collage of evidence that the victim was on the sidewalk when Kleine's vehicle struck him. Two eyewitnesses, including Kleine's passenger and the person walking alongside the victim, unequivocally testified at trial that the point of impact was on the sidewalk.[8] Also, there was testimony about a tire skid mark on the curb that appeared to be fresh (because it was very dark, and not weathered or faded), suggesting that Kleine's vehicle may have jumped the curb before striking Thomas. (Doc. 14, Exh. A, at 357, 378-81.)[9] Further, the jury heard that

---

[7] During cross-examination, defense counsel suggested that Officer Diorio's point-of-impact testimony amounted to nothing more than a "swag" for which he had "pitifully little reasons." (*Id.* at 402-03.) At the conclusion of Officer Diorio's testimony, defense counsel argued in the jury's presence that he "has no qualifications whatsoever, has done no testing, no analysis, doesn't have any specific point of impact other than generalized, and his testimony is so woefully deficient in substance that … you should tell the jury to disregard it simply because it is simply a swag." (*Id.* at 407.)

[8] Witness Josh Deese testified that he and the victim were walking home from a bar that evening because "we just lived right down the road. And we were walking down the sidewalk, and I remember not too long after we walked out and got on the sidewalk, I remember him stepping on my shoe, you know, my shoestring." (Doc. 14, Exh. A, at 210.) Deese further testified that at the time of impact, "we were both walking on the sidewalk and we was walking close together." (*Id.* at 256.) Witness Doug Dupre, the passenger in Kleine's vehicle at the time of the accident, testified that as the vehicle pulled out of the parking lot, he "saw two guys walking on the curb," not on the street, after which the vehicle "jumped the curb" and "hit that guy." (*Id.* at 273-76.)

[9] To the extent that Kleine objects that it was error for the trial court to allow the officers to offer lay opinions under Rule 701 that the skid mark on the curb appeared fresh, that objection is not well taken. Alabama law authorizes witnesses to offer lay opinions as collective facts or shorthand renditions of facts, so long there is a logical basis for the opinion. *See, e.g.,*
(Continued)

there was debris (including a cell phone body, the victim's hat, other personal effects of the victim, and a gray plastic cap that corresponded to a missing part on Kleine's gray vehicle) on the sidewalk at that location. (*Id.* at 383, 504, 507-12.) In sum, there was considerable evidence presented to the jury in support of the State's theory that Kleine's vehicle struck the victim on the sidewalk, rather than in the roadway.[10]

It also should not be overlooked that Officer Diorio's testimony about point of impact was quite limited on direct examination. Far from testifying at length as to his opinions, Officer Diorio merely stated in passing where he thought the point of impact was and then moved on to other topics concerning his observations at the scene.

In short, then, the challenged testimony concerning point of impact was largely neutralized by pointed cross-examination from defense counsel, was redundant of other evidence (including eyewitness testimony) that the vehicle had struck Thomas on the sidewalk, and amounted to mere seconds of the witness's testimony on direct examination. Based on these circumstances, the Court agrees with the Alabama Court of Criminal Appeals' assessment that Officer Diorio's point-of-impact opinions were cumulative, and that any error in admitting same

---

*Hale v. State*, 673 So.2d 803 (Ala.Crim.App. 1995) (witness's opinion that prints were "fresh" was properly admitted as a "collective fact" or "shorthand rendition of fact"). Officers' testimony that the skid mark appeared "fresh" is just that kind of collective shorthand, and was logically based on their observations, including the dark black, unweathered appearance of that mark in their examination of the crime scene. *See Murrell v. State*, 377 So.2d 1102, 1106 (Ala.Crim.App. 1979) ("collective fact" doctrine authorized police officer to state opinion as to how long candy wrappers at murder scene had been there, based on fact that crumbs around the wrappers were soft); *see generally Tice v. State*, 460 So.2d 273, 277 (Ala.Crim.App. 1984) ("No special training or expertise is required of a witness to identify the tread of tires and the tracks they leave."). It was well within the scope of Rule 701 for the officers to testify to their observations of the tire mark on the curb and the appearance that the mark was fresh.

[10]  In his objections, Kleine articulates arguments that this evidence was not undisputed, and that there was contrary evidence. For example, petitioner tries to exploit perceived discrepancies in witnesses' statements at trial, as compared to their statements before trial, based on his own self-serving interpretation of those statements (which he fully argued to the jury, in any event). He points out that not all of the debris was found on the sidewalk. But this evidence does not defeat the reasoning of the Alabama appellate court and the Magistrate Judge that, given the abundant other evidence of guilt, the admission of Officer Diorio's point-of-impact testimony, even if erroneous, did not render the trial fundamentally unfair.

was harmless under Alabama law.[11] For the same reasons, the Court further concurs with the Magistrate Judge's conclusion that admission of such evidence did not impair the fundamental fairness of Kleine's trial. Accordingly, there was no Due Process violation attendant to the admission of this point-of-impact testimony, and habeas relief is unwarranted.[12]

### C. *Admission of Diagram of Crime Scene.*

Petitioner also objects to the Magistrate Judge's determination that there was no error in the trial court's admission of an accident diagram designated as State's Exhibit 73. (Doc. 14, Exh. A, at 980-81.) That diagram was hand-drawn by Officer Diorio to depict the crime scene, including the roadway, the sidewalk, the nearby intersections and parking lot, and the location where the victim's body was found. The diagram included an arrow with the notation "Pt. of impact" on the sidewalk. Kleine contends that admission of the diagram into evidence was erroneous because the diagram was part of an accident report, and accident reports are

---

[11] *See, e.g., Miller v. State*, --- So.3d ----, 2010 WL 2546422, *17 (Ala.Crim.App. June 25, 2010) ("This Court has repeatedly held that the erroneous admission of evidence that is merely cumulative is harmless error.") (citations and internal quotation marks omitted); *Spurgeon v. State*, 560 So.2d 1116, 1121 (Ala.Crim.App. 1989) ("The same facts testified to by Dr. Embry had already been legally admitted into evidence through the testimony of other witnesses. … Any error which occurred here was harmless."); *Thompson v. State*, 527 So.2d 777, 780 (Ala.Crim.App. 1988) ("Testimony which may be apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred.") (citations omitted).

[12] Insofar as Kleine strives to develop a "vouching" argument by suggesting that Officer Diorio's point-of-impact testimony improperly bolstered the two eyewitnesses' credibility, the Court agrees with the Magistrate Judge's treatment of that objection. Petitioner's reliance on *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998), is misplaced because that case is materially distinguishable. Unlike in the case at bar, the expert in *Snowden* vouched forcefully for the victims' credibility in a child abuse case by opining "that child witnesses in sexual abuse cases tell the truth." *Id.* at 739. Unlike in the case at bar, *Snowden* involved a case where there was "very little" other evidence of guilt. *Id.* at 738. Here, by contrast, Officer Diorio did not speak to Deese's and Dupre's credibility at all, but simply stated his opinion as to where he thought the accident occurred. That opinion was supported, not only by the independent testimony of Deese and Dupre, but also by physical evidence at the scene, such as the location of the tire mark, gray plastic cup, hat and cell phone. The Court therefore agrees with the Magistrate Judge's finding that this case, unlike *Snowden*, is not one of the very rare cases where an evidentiary error gives rise to a due process violation on a theory of improper vouching.

inadmissible under Alabama law. Kleine further argues that the point of impact notation on the diagram was inadmissible because Officer Diorio was not qualified to offer such opinions.

Alabama courts have routinely concluded that a trial court has discretion to admit diagrams into evidence in criminal cases. *See, e.g., Yeomans v. State*, 898 So.2d 878, 894 (Ala.Crim.App. 2004) ("The diagram was certainly relevant, and the trial court did not abuse its discretion in admitting the diagram of the crime scene into evidence."); *Spurgeon v. State*, 560 So.2d 1116, 1123 (Ala.Crim.App. 1989) ("The use of diagrams for the purpose of illustrating testimony is within the sound discretion of the trial judge."); *Wagner v. State*, 489 So.2d 623, 625 (Ala.Crim.App. 1985) ("The admission into evidence of a diagram used to aid a witness in his testimony is largely left to the sound discretion of the trial court."). The mere fact that the diagram was originally appended to accident report has no logical bearing on the admissibility of the diagram itself, at least where it is offered separate and apart from the accident report.[13] As a general proposition, the trial court did not abuse its discretion in allowing Officer Diorio to utilize a diagram of the crime scene as a visual aid, or in admitting that diagram into evidence, notwithstanding the nexus between the diagram and the accident report. So the Alabama Court of Criminal Appeals and the Magistrate Judge found. This Court concurs.

That said, for the reasons stated in section III.B., *supra*, the "Pt of Impact" designation on the diagram is cause for concern because no foundation was laid to show that Officer Diorio was an expert on this topic, and his testimony as to point of impact appears to exceed the boundaries of a Rule 701 lay opinion. Nonetheless, the Court finds that even erroneous admission of the diagram would not call into question the fundamental fairness of Kleine's trial, and would not compromise his Due Process rights, for the same reasons set forth in section III.B., *supra*. Contrary to petitioner's argument, the diagram did not compound any error in allowing point-of-impact testimony, but at best was part and parcel of the same (ultimately harmless) error.[14]

---

[13] Were the law otherwise, a nonsensical distinction would exist between a diagram prepared by a police officer and stapled to an accident report, on the one hand, and a diagram drawn by the officer at trial to illustrate his testimony, on the other. Under Kleine's theory, the second diagram would be admissible, but the first would not. Neither Alabama law nor common sense appear to support such an anomalous result.

[14] Two other aspects of Kleine's objection to the diagram warrant brief treatment here. First, Kleine suggests that the diagram was inadmissible because it was "based solely [on] hearsay, not falling into any exception to the hearsay rule." (Doc. 19, at 16-17.) Petitioner's (Continued)

### D. Refusal to Extend Deadline for Defendant to Retain Expert Witness.

Kleine's fourth objection to the Report and Recommendation pertains to his habeas claim that the trial court erroneously refused to grant him a continuance to obtain an expert witness on point of impact. According to petitioner, "[t]he basis of Kleine's objection is that due process mandates the accused be allowed to present qualified expert witnesses to testify on crucial, material facts." (Doc. 18, at 2-3.)[15]

As an initial matter, it is not at all clear that the trial court in fact "refus[ed] to grant [Kleine] a continuance to obtain an expert witness on point-of-impact" (doc. 18, at 2), which is the entire *raison d'etre* of this objection. Indeed, the record reflects that defense counsel never filed a motion for continuance, but instead filed several motions in limine pertaining to the State's expert witnesses. In oral argument on those motions, defense counsel sought primarily to exclude the State's proposed testimony linking the tire mark to the accident or identifying the

---

insinuation that Officer Diorio merely parroted what Deese told him about the point of impact is incorrect. Officer Diorio's trial testimony reflected that his point-of-impact determination was based on his observations and investigation of the crime scene, which would include the physical evidence on site, rather than simply repeating what a witness had told him. Petitioner's trial counsel recognized as much when he pointed out that the proposed point-of-impact testimony "doesn't say this is the point of impact as described by Joshua Dees [*sic*]," but instead purported to have been "based on some sort of study or analysis or training." (Doc. 14, Exh. A, at 41.) This is not a hearsay violation. Second, petitioner theorizes that Officer Diorio's opinions on point of impact were unfairly prejudicial because "expert testimony may be assigned talismanic significance in the eyes of lay jurors." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). But there was no reason for the jury in this case to assign talismanic significance to Officer Diorio's testimony because (a) the State did not hold him out as an expert, (b) the jury never heard of any expertise that Officer Diorio might have in any field relevant to ascertaining point of impact, and (c) defense counsel's probing cross-examination made it perfectly clear that Officer Diorio possessed no special training, experience or expertise that might awe the jury into overweighting his testimony. In short, the risk that a jury would slavishly adhere to Officer Diorio's opinions because of his expert status is nonexistent.

[15] This ground for habeas relief appears to have morphed somewhat during the course of these proceedings. In his Petition, Kleine framed the issue as being that his conviction "resulted from the state violating the trial court's discovery order and Rule 16.1 … by not disclosing intent to call an expert witness …and the trial court not allowing Kleine's attorney time to retain an expert witness." (Doc. 1, at 20.) In his objections to the Report and Recommendation, Kleine has downplayed the Rule 16.1 argument and instead focused on the "deprivation of an expert" angle.

point of impact, not to obtain a continuance. (Doc. 14, Exh. A, at 17-43.) Only once in the lengthy discussion about the officers' proposed opinion testimony did defense counsel assert that if the witness were to testify about the source of the scuff mark, "then under Rule 16-5, then we need time to get our own expert. We did not get an expert simply because they didn't have an expert." (Doc. 14, Exh. A, at 36-37.) Counsel did not elaborate on, revisit, or otherwise press that contention, which was buried in a much longer oration. Of course, the State did not seek expert witness status for its law enforcement witnesses and the trial court did not grant it, so defense counsel's stated concern (*i.e.*, that the defense wanted an expert only to counter any State expert) would appear to be mooted by the absence of any designated expert for the State. Furthermore, once the trial court rejected defense counsel's argument by stating "I'm going to deny your motion in limine or motion – whatever motion it was you filed to prevent his testifying to those facts" (*id.* at 39), defense counsel did not request a continuance or state that Kleine wished to retain a point-of-impact expert. Rather, defense counsel merely stated, "I understand that Your Honor is denying my Rule 16-5 request," without saying what that request entailed or even mentioning a continuance component. (*Id.* at 43.)[16] The transcript reveals no other discussion of any kind concerning a request for continuance to enable Kleine to hire an expert witness. Thus, the entire procedural foundation of this objection -- that "the state trial court … refus[ed] to grant him a continuance to obtain an expert witness" (doc. 18, at 2) -- appears unsupported by the record.

Even if the trial court did deny a defense motion for continuance, as Kleine now maintains, that ruling neither was improper nor implicated his constitutional rights. If, as Kleine insists, "the point-of-impact was critical and provided a basis for the manslaughter charge" (doc. 18, at 3), then why did he not hire an expert witness on that topic prior to the morning of trial?

---

[16] Rule 16.5 is a catch-all provision stating that if a party fails to comply with a discovery order, "the court may order such party to permit the discovery or inspection; ***may grant a continuance if requested by the aggrieved party***; may prohibit the party from introducing evidence not disclosed; or may enter such other order as the court deems just under the circumstances." Rule 16.5, Ala.R.Crim.P. (emphasis added). Given the open-ended nature of relief authorized by Rule 16.5, it is far from clear from the transcript of the motion hearing that defense counsel's oblique reference to "my Rule 16-5 request" should have alerted the trial court that defendant was requesting a continuance to retain an expert on point-of-impact issues (rather than requesting that the State be prohibited from offering such testimony), much less that the trial court expressly denied any such request.

There is no indication in the record that Kleine ever sought to retain a point-of-impact expert prior to the commencement of trial. It appears that his attorney made a strategic decision that if the State did not retain a point-of-impact expert, then the defense would not do so either. But this strategic decision by trial counsel undercuts habeas counsel's repeated protestations about the centrality of this evidence. If, as habeas counsel strenuously argues, point of impact was "the most critical issue in the case" (doc. 1, at 21), then surely trial counsel would not have waited until the morning of trial to mention a desire to procure expert testimony on this subject. Unlike many authorities cited by petitioner, this is simply not a case in which an indigent criminal defendant timely requested funds to hire an expert, but the trial court refused to allow it. Here, Kleine could have retained an expert at any time prior to trial, but he elected not to do so, only to second-guess his strategic decision on the day of trial upon learning that the State's fact witnesses might testify about point of impact. Simply put, Kleine's failure to present expert testimony at trial regarding the point of impact was the product of his own strategic decision, not a ruling by the trial court denying him the right to present expert testimony.[17]

Moreover, habeas counsel's contention that "[t]here is no adequate means to counter such expert testimony except by the testimony of another expert witness" (doc. 1, at 23) is inaccurate. The trial transcript establishes that Kleine's attorney largely neutralized Officer Diorio's offhand statement about the point of impact by demonstrating that he had performed no tests, had received no training, and had cultivated no expertise of any kind that would support such an opinion. Effective cross-examination went a long way toward countering the objected-to witness, even without a corresponding expert of petitioner's choosing.

Finally, petitioner's argument about a continuance fails because nothing in Rule 16.5 of the Alabama Rules of Criminal Procedure would obligate the trial court to grant Kleine a continuance under the circumstances presented. That rule affords trial courts wide discretion to permit discovery, to grant a continuance, to exclude evidence, or to "enter such other order as the court deems just under the circumstances." Rule 16.5, Ala.R.Crim.P.; *see also State v.*

---

[17] Any suggestion that the State ambushed petitioner by injecting point of impact into the case at the eleventh hour is misguided. Point of impact was always at issue in the case, no matter what the officers did or did not say in their trial testimony. After all, the State called multiple eyewitnesses to testify that the vehicle struck the decedent on the sidewalk, so that issue was part of the State's theory of recklessness regardless of any law enforcement testimony.

*Seawright*, 961 So.2d 187, 189 (Ala.Crim.App. 2006) (noting that Rule 16.5 "places the remedy for discovery violations within the sound discretion of the trial court") (citation omitted); *Brand v. State*, 941 So.2d 318, 323 (Ala.Crim.App. 2006) (similar). Petitioner has not shown that the trial court's decision not to grant him a continuance (if, in fact, such a decision was made) amounted to an abuse of discretion under the Alabama Rules of Criminal Procedure, much less that it rose to the level of a constitutional deprivation. As the Report and Recommendation astutely observed, point of impact was hardly the linchpin of the case. The State put on abundant other evidence (*i.e.*, evidence that Kleine had been drinking heavily for many hours before getting behind the wheel, evidence that his blood-alcohol level was well over the legal limit for intoxication, evidence that he was speeding, evidence that his passenger warned him repeatedly about the pedestrians before impact, evidence that Kleine was not even watching the roadway when he struck Thomas, etc.) from which the requisite finding of recklessness could be reached to support a guilty verdict on the manslaughter count, irrespective of whether the point of impact was on the road or on the sidewalk. (Doc. 15, at 18-19.) In any event, given the minimal trial time devoted by Officer Diorio in testifying about point of impact, and the defense's thorough cross-examination establishing his lack of any meaningful basis for that opinion, the trial court would have acted well within its discretion to decline to continue the trial moments before jury selection to enable Kleine to retain a point-of-impact expert that he could have retained much earlier had he chosen to do so.[18]

---

[18] In an effort to show prejudice, petitioner relies heavily on the opinions of Cliff Prosser, an accident reconstruction expert that he retained to examine point-of-impact issues in this case after trial had concluded. However, Kleine reads more into Prosser's opinions than they can reasonably support. In particular, petitioner argues that Prosser "established by scientific principles that the point-of-impact occurred in the road." (Doc. 19, at 22; *see also* doc. 18, at 2.) Elsewhere, petitioner states that Prosser "concluded the point-of-impact was in the road." (Doc. 19, at 3.) Not so. The "Appendix" attached to petitioner's objections (which purports to recite Prosser's conclusions, although he did not sign it and there is no indication that he has ever even read this apparently attorney-prepared document) reflects that Prosser "concluded that there is no evidence to determine to a reasonable degree of scientific certainty whether the impact occurred on the sidewalk or the roadway surface." (Doc. 19, Appx., at d.) In other words, according to petitioner's own documents, Prosser's expert opinion is not (as Kleine repeatedly insists) that the point of impact was the road, but rather is that the point of impact is indeterminate. That being the case, it is difficult to fathom how Prosser's admittedly inconclusive testimony would have materially assisted Kleine at trial, particularly given the eyewitness testimony from two different people that Kleine's vehicle struck the victim on the
(Continued)

In short, it is the opinion of the undersigned that the Alabama Court of Criminal Appeals and the Magistrate Judge correctly found no error in the trial court's handling of petitioner's day-of-trial objections pursuant to Rule 16.5 of the Alabama Rules of Criminal Procedure.

### E. *Admission of Draeger Test Results.*

In his § 2254 Petition, Kleine also seeks relief on the ground that the trial court erroneously admitted into evidence the results of his breath alcohol test, the so-called "Draeger test." According to petitioner, "[t]he basis of Kleine's objection is that admission of results of test administered before arrest violated his due process rights." (Doc. 18, at 3.)

This ground for relief hinges on Alabama's implied consent law, which provides in relevant part that a driver "shall be deemed to have given his consent … to a chemical test … for the purpose of determining the alcoholic content of his blood *if lawfully arrested* for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle." Ala. Code § 32-5-192 (emphasis added); *see also Meininger v. State*, 704 So.2d 1034, 1036 (Ala. 1997) (by statute, "a motorist must have been 'lawfully arrested' before any chemical test to determine intoxication is conducted in order to authorize the admission into evidence of the test results") (citation omitted).

Before trial, Kleine filed a motion to suppress the Draeger test results on the stated ground that he was not under arrest when the test was performed. (Doc. 14, Exh. A, state court file, at 28-29.) The trial court conducted an evidentiary hearing on that motion on July 13, 2006, at which time Officer Bryan Fillingim testified that officers arrested and Mirandized Kleine well in advance of his arrival at the police station for alcohol testing. In particular, the witness explained that he and another officer grabbed Kleine (who had the smell of alcohol on his breath), placed him on the ground, handcuffed him, placed him in a patrol car, placed him under

---

sidewalk, plus the presence of a fresh tire mark on the curb and debris (including a piece of the vehicle and several of the victim's personal effects) on the sidewalk. Also, the Court notes that it is improper for Kleine to use his "Appendix" as a platform for criticizing the Report and Recommendation, complaining that "[t]he Magistrate Judge did not even mention the conclusions of Prosser" (doc. 19, at 4) when such conclusions were set forth in an Appendix filed only <u>after</u> entry of the Report and Recommendation. *See generally Williams*, 557 F.3d at 1292 (holding "that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge").

arrest and read him his Miranda rights. (Doc. 14, Exh. A, Supplemental Record, at 31-32.) Officer Fillingim further testified that it was only after the officers took Kleine to the police station that the Draeger test was administered. (*Id.* at 36.) Officer Fillingim's testimony was unequivocal that "I myself arrested him on the scene of the incident of the offense." (*Id.* at 60.) During the same hearing, Officer James Nelson reinforced this testimony by stating that the officers had patted Kleine down, handcuffed him, arrested him, placed him in a patrol car, and read him his rights all before taking him to the station to perform the Draeger test. (*Id.* at 65-68.) That test recorded Kleine's blood-alcohol level at 0.17. (*Id.* at 87.) Based on this and other evidence, the trial court denied the motion to suppress. (*Id.* at 116-17.)

Under Alabama law, a trial judge's evidentiary rulings may be disturbed on appeal only upon a clear showing of abuse of discretion. *See, e.g., Gholston v. State*, --- So.3d ----, 2010 WL 753298, *3 (Ala.Crim.App. Mar. 5, 2010) ("This Court will not reverse a circuit court's ruling in either admitting or excluding such evidence in the absence of abuse.") (citations and internal quotation marks omitted); *Sanders v. State*, 986 So.2d 1230, 1232 (Ala.Crim.App. 2007) ("The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion.") (citations omitted). Here, there was substantial evidence presented to the trial court in the evidentiary hearing to support its conclusion that Kleine was lawfully under arrest when the Draeger test was performed, so as to render that evidence admissible under Alabama's implied consent law and to warrant denial of the motion to suppress.[19] As such, the trial court cannot be found to have abused its discretion in admitting the Draeger test evidence over Kleine's objection. This Court fully concurs with the Alabama Court of Criminal Appeals

---

[19] To be clear, the Court is cognizant that Kleine's counsel argued at the evidentiary hearing that Officers Fillingim and Nelson were not credible, inasmuch as their testimony was not fully reflected in their contemporaneous reports, there were some discrepancies in recorded times, and so on. (Doc. 14, Exh. A, Supplemental Record, at 113-16.) But nothing in Kleine's showing (then or now) demonstrated that it was an abuse of discretion for the trial court to accept as credible the officers' testimony, which plainly established that Kleine had been arrested for DUI before he was taken away from the scene, and well before any breath alcohol testing was performed. Contrary to petitioner's argument, the threshold issue is not whether the "evidence was sufficient for the Trial Judge to grant Kleine's Motion to Suppress" (doc. 19, at 27), but whether it was an abuse of discretion for him not to do so. The Court concurs with the Alabama Court of Criminal Appeals' determination that it was not.

and the Magistrate Judge that there was no error here, much less error of the sort that might implicate fundamental fairness concerns so as to give rise to a viable constitutional claim.

      *F.*    *Cumulative Error.*

Lastly, petitioner objects to the Magistrate Judge's determination that he was not entitled to habeas relief pursuant to the cumulative error doctrine, which authorizes the granting of relief where the cumulative effect of the state trial court's errors violates a petitioner's right to due process. *See, e.g., United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The cumulative error doctrine provides that an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.") (quotation omitted). When faced with a claim of cumulative error, a court must examine "any errors in the aggregate and the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *United States v. Hardy*, 2010 WL 2911523, *3 (11th Cir. July 27, 2010). After having performed this examination, the Court finds, as did the Alabama Criminal Court of Appeals and the Magistrate Judge, that petitioner's trial was not so replete with errors that he was denied a fair trial. This ground for habeas relief was properly deemed by the Magistrate Judge to be without merit.

**IV.**    **Conclusion.**

For all of the foregoing reasons, petitioner's Objections (docs. 18 & 19) to the Report and Recommendation are **overruled** in their entirety. The Report and Recommendation (doc. 15) is **adopted** by this Court, and Kleine's Petition for Writ of Habeas Corpus is **denied**. The Court further agrees with and adopts the Magistrate Judge's recommendation that issuance of a Certificate of Appealability is not warranted here. A separate judgment will enter.

      DONE and ORDERED this 5th day of August, 2010.

                                  s/ WILLIAM H. STEELE
                                  CHIEF UNITED STATES DISTRICT JUDGE